UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE VITELLO, on behalf of herself and others similarly situated, <br><br>  Plaintiff, <br><br> -vs- <br><br> NATROL, LLC, a Delaware corporation, <br><br>  Defendant. | ) ) ) ) ) ) Case No. 4:18-cv-00915-SEP ) ) ) ) ) ) ) |

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO</u>**
**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Jonathan E. Fortman (40319MO)
Law Office of Jonathan E. Fortman, LLC
250 St. Catherine Street
Florissant, MO 63031
Ph# (314) 522-2312
Fax: (314) 524-1519
Email:  jef@fortmanlaw.com

Steve A. Miller (8758CO)
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

John C. Kress (53396MO)
Kress Law, LLC
P.O. Box 6525
St. Louis, MO  63125
Ph.#:  (314) 631-3883
Fax:  (314) 332-1534
Email:  jckress@thekresslawfirm.com

**TABLE OF CONTENTS**

Page No.

Table of Authorities……………………………………………………………  ii

I.   Introduction……………………………………………………………  1

II.  Missouri Merchandising Practices Act (MMPA)……………………………  2

III. Argument…………………………………………………………………….  3

    A. Plaintiff Can Show an Ascertainable Loss Under the MMPA
       and Has Standing to Proceed with Her Claims………………………..  3

    B. Plaintiff Can Show and Ascertainable Loss Sufficient to State
       a Claim for Unjust Enrichment and Has Standing to Proceed
       with Her Claims……………………………………………………….  10

IV.  Conclusion………………………………………………………………….  11

# **TABLE OF AUTHORITIES**

**Cases**

*Beardsall v. CVS Pharmacy, Inc.*
   953 F.3d 969  (7th Cir. 2020)……………………………………………………… 8

*Beardsall v. CVS Pharmacy, Inc.*,
   No. 16-C-6103, 2019 WL 1168103 (N.D. Ill. March 13, 2019)…………………….. 8

*Curry v. Regents of University of Minnesota*,
   167 F.3d 420 (8th Cir. 1999)…………………………………………………….. 3

*Grawitch v. Charter Communications, Inc.*,
   No. 4:12-cv-1990, 2013 WL 253534 (E.D.Mo. Jan. 23, 2013)……………………. 8

*Hargis v. JLB Corp.*,
   357 S.W.2d 574,586 (Mo. banc 2011)…………………………………………… 10

*Hughes v. Ester C. Co.*,
   330 F.Supp. 862 (E.D.N.Y. Sept. 4, 2018)…………………………….………….. 9-10

*Johnson v. Atkins Nutraceuticals, Inc.*,
   2017 WL 6420199 (W.D.Mo March 29, 2017)……………………………………. 3,5

*Meuir v. Greene County Jail Employees*,
   487 F.3d 1115 (8th Cir. 2007)……………………………………………………. 3

*Murphy v. Stonewall Kitchen, LLC*,
   503 S.W.3d 308 (Mo. App. 2016)………………………………………………... 7

*Plubell v. Merck & Co., Inc.*,
   289 S.W.3d 707 (Mo. App. 2009)…………………………………………………  2

*Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*,
   199 S.W.3d 228 (Mo. App. 2006)………………………………………………….  2

*Sierra Club v. Morton*,
   405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)…………………………………  3

*Thornton v. Pinnacle Foods Group, LLC*,
   2016 WL 4073713 (E.D.Mo. August 1, 2016)………………………………………… 10

*Torgeson v. City of Rochester*,
   643 F.3d 031, 1042 (8th Cir. 2011)……………………………………………………  4

*White v. Just Born, Inc.*,
  No. 2:17-cv-04025, 2017 WL 3130333 (W.D.Mo. July 21, 2017)…………………  2

**Statutes and Regulations**

21 CFR 101.93(c)……………………………………………………………………….  6

21 U.S.C. §301, *et seq*………………………………………………………………………  6

65 Fed. Reg. 200, 1003, 2000 WL 4559 (Jan. 6, 2000)…………………………………  6

§407.020, R.S.Mo………………………………………………………………………..  2

§407.025, R.S.Mo………………………………………………………………………..  2

On March 31, 2021, this Court entered its Memorandum and Order [Doc. # 84] denying in part Defendant's Motion for Summary Judgment [Doc. # 66] and ordering Plaintiff to respond to the Defendant's argument that Plaintiff's admissions regarding her use of Cognium undermine her MMPA and unjust enrichment claims.  In response to this Court's Order, Plaintiff submits this memorandum of law.

## I.     Introduction

In its Order, this Court identified the three arguments made by Defendant in support of its Motion for Summary Judgment:

(a) that Plaintiff cannot show ascertainable loss for the purposes of the MMPA because she admits that she discontinued taking Adderall when she started taking Cognium and did not consult a healthcare professional, in violation of the product's warnings;

(b) that Plaintiff has "no admissible evidence of Cognium's 'actual value'" which is required to prove that she experienced an ascertainable loss under the MMPA; and

(c) that Plaintiff cannot show any causal connection between any allegedly unlawful practice and her purported loss because she discontinued taking Adderall when she started taking Cognium.

As noted by this Court, while all three of Defendant's arguments are similar, there is a subtle difference between the first argument and the other two.  The first argument goes to whether Plaintiff can show an ascertainable loss to permit her to proceed further in this case while the other two arguments go to the extent of her damages should the case proceed to discovery on the merits of her claim.  An analysis of the true nature of Plaintiff's claims, when viewed in the light of the purpose and intent of the Missouri Merchandising Practices Act as set forth by Missouri courts, mandates that this case proceed to the certification stage.

1

## II. Missouri Merchandising Practices Act (MMPA)[1]

"The purpose of Missouri's Merchandising Practices Act is to preserve fundamental honesty, fair play and right dealings in public transactions." *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 711(Mo. App. 2009)(citing *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo. App. 2006)). Consumer protection is paramount under the MMPA and its prohibitions are construed broadly. *White v. Just Born, Inc.*, Case No. 2:17-cv-04025, 2017 WL 3130333 at *4 (W.D.Mo. July 21, 2017). "The Missouri Supreme Court has explained that an 'unfair practice' under the MMPA covers every unfairness, to whatever degree." *Id.* The MMPA prohibits "deception, fraud, false pretenses, false promise, misrepresentation, unfair practice…in connection with the sale or advertisement of any merchandise in trade or commerce" pursuant to the provisions of §407.020.1, R.S.Mo. *Plubell*, 289 S.W.3d at 711. A plaintiff who purchases or leases merchandise primarily for personal, family or household purposes and "suffers an ascertainable loss of money or property, real or personal as a result of [an unlawful practice]" may bring a civil action under the MMPA to recover damages. §407.025.1, R.S.Mo. The issue raised by Defendant for which this Court ordered this response is simply whether Plaintiff can show an ascertainable loss based on her deposition testimony and admissions. As fully set forth below, there are contested issues of material fact and even with Plaintiff's admissions concerning her use of Cognium Defendant is not entitled to judgment as a matter of law.

---

[1] Several major changes were made to the MMPA by the Missouri legislature which were signed into law by the Missouri Governor. Those changes, effective August 28, 2020, are primarily codified in §407.025, R.S.Mo. However, as this case was filed prior to the effective date, the changes are not applicable to this matter.

2

### III. <u>Argument</u>

**A. Plaintiff Can Show an Ascertainable Loss Under the MMPA and Has Standing to Proceed with Her Claims.**

The question presented by this Court in its Memorandum and Order is, in effect, whether Plaintiff has Article III standing to make her claims. Specifically, do the admissions of Plaintiff that she purchased Cognium in an attempt to treat symptoms of attention deficit disorder and that she did not consult a healthcare provider prior to using Cognium strip her of Article III standing to bring claims under the MMPA and for unjust enrichment? If the answer to that question is "no," then this case proceeds to class certification consideration based on the Court's denial of summary judgment on the remaining two grounds.

Article III standing limits the jurisdiction of the federal courts to "justiciable cases and controversies." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007). Article III requires a plaintiff to demonstrate "(1) an injury in fact, which is an invasion of a legally protected interest that is concrete, particularized, and either actual or imminent; (2) causation; and (3) redressability." *Curry v. Regents of University of Minnesota*, 167 F.3d 420, 422 (8th Cir. 1999). "[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing." *Johnson v. Atkins Nutraceuticals, Inc.*, 2017 WL 6420199 *3 (W.D.Mo. March 29, 2017)(citing *Sierra Club v. Morton*, 405 U.S. 727, 733-34, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

The allegations contained in the Amended Complaint, along with the testimony and evidence already before this Court, is more than sufficient to confer standing and permit the case to proceed. Plaintiff alleges that the packaging of Cognium contained the following representations on the front of the box containing the bottle of Cognium: "[c]linically proven to improve Memory and Concentration." [[Doc. # 80, ¶ 18]. On the side of the box, Defendant represented

3

that "[n]ine clinical studies in adults, seniors and children showed statistically significant improvements in memory and cognition in 4 weeks or less when taken as directed." [Doc. # 80, ¶ 21]. These representations were also made on the Cognium bottle itself. [Doc. # 80, ¶¶ 25-26]. These facts are not in dispute. Plaintiff alleges that two of the nine clinical studies referenced by Natrol were retracted years before her purchase of the product for data fabrication and falsification but that Natrol failed to inform consumers of that fact. [Doc. # 80, ¶¶ 52-53, 55-56]. These facts concerning the retracted studies have not been disputed in Defendant's Motion for Summary Judgment and must be accepted as true for purposes of this motion. *Torgeson v. City of Rochester,* 643 F.3d 031, 1042 (8th Cir. 2011)(On a motion for summary judgment disputed facts must be viewed in the light most favorable to the non-moving party). Finally, Plaintiff alleges in the Amended Complaint that she would not have purchased the Cognium had Defendant disclosed that two of the nine clinical studies had been retracted. [Doc. # 80, ¶¶ 96-98]. During deposition, Plaintiff testified as follows:

> Q. Would you purchase products that are supported by less than nine studies? Would you purchase health supplements or medication that were supported by less than nine studies?
>
> A. There's a difference between supplements or medications, so would I? No, but that helped a lot on that particular product. MCT oil isn't nine clinical studies, but it also doesn't tell me that, you know, I'm going to have, you know, all this cognitive memory and, you know, it wasn't supported by nine clinical studies. That's on the box. (See Exhibit 1 – Deposition Transcript Excerpts of Plaintiff, pp. 156-157)

In addition, Plaintiff's testimony as it relates to her alleged economic harm is consistent with the allegations set forth in the Amended Complaint. During her deposition, the following exchange occurred:

> Q. Do you claim you were injured economically?
> A. Yes.

4

      Q.      In what amount?

      A.      $20 around – 40, actually because I bought it twice.  (Ex. 1, pp. 161-162).

All of the allegations contained in the Amended Complaint, further supported by the two snippets of Plaintiff's testimony referenced above, set forth a straightforward claim under the MMPA: (1) Defendant represented on its Cognium packaging that the product was clinically proven to improve memory and concentration based on nine clinical trials; (2) that representation was false based on the retraction of at least two of the studies; (3) Plaintiff would not have purchased the product had she known about the misrepresentation; and (4) as a result of Plaintiff's reliance on the misrepresentation she purchased the product for approximately $40.00.

An instructive case on the standing issue is *Johnson v. Atkins Nutraceuticals, Inc.*, 2017 WL 6420199 (W.D.Mo March 29, 2017).  In that case, plaintiff brought a putative class action alleging that defendant misled consumers into believing that the Atkin products were low in carbohydrates.  Defendant sought to dismiss the complaint on Article III standing grounds arguing that plaintiff did not plead an injury-in-fact sufficient to meet Article III requirements. However, plaintiff claimed "his economic injury stems from defendant's false, misleading or deceptive labeling practices, and that he would not have purchased the product had he known that the labels were false or misleading.  Furthermore, plaintiff's complaint alleged that he saw the labels and relied on them in making his purchasing decision.  That was sufficient to support standing." *Johnson* at *3.  Much like *Johnson*, here Plaintiff claims that her economic injury stems from Defendant's false, misleading, and deceptive labeling practices and that she would not have purchased the product had she known that the representations were false or misleading. Plaintiff saw the labels and relied on them in making her purchasing decision which is sufficient to support standing.

Yet, Defendant attempts to strip Plaintiff of her standing by injecting the conduct of Plaintiff following her purchase of Cognium based on disclaimers on the packaging to immunize it and shield it from liability. Defendant states: "[i]n essence, Plaintiff now attempts to hold Cognium to the same efficacy standards as a controlled substance doctors prescribe to treat ADD." [Doc. #52, p.8]. That statement completely mischaracterizes the nature of the claims being made in this case. Defendant is attempting to convince this Court that Plaintiff is asserting a "substantiation" claim questioning the efficacy of the product. However, it is the blatant misrepresentation as to the nine clinical studies used to support the other representations on the packaging and Plaintiff's reliance on the misrepresentation in deciding to purchase the product that form the basis of Plaintiff's claims.

Defendant's position is solely based on the two disclaimers on its packaging. The first disclaimer on the packaging states "[t[hese statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease." The FDA must approve new drugs before they can be sold on the market. However, the Federal Food, Drug and Cosmetics Act ("FFDCA"), 21 U.S.C. §301, *et seq.,* creates an exemption from this approval process for nutritional supplements "intended to affect the structure or function of the body" if the supplements carry the exact disclaimer that is on the Cognium packaging. 21 CFR 101.93(c). The disclaimer requirement aligns with the FDA's recognition that few nutritional supplements have been the subject of adequately designed clinical trials. 65 Fed. Reg. 200, 1003, 2000 WL 4559 (Jan. 6, 2000). Defendant represents on the Cognium packaging that it "[i]ncreases blood flow and nutrition to the brain's centers for memory and cognition." That representation is a "structure" claim which requires the disclaimer. However, that disclaimer would not cause a "reasonable consumer" to question the

6

statement that Cognium "has been clinically proven effective in nine clinical trials" and does not excuse the failure of Defendant to disclose that at least two of those studies were retracted.

The FDA mandated disclaimer in this case is analogous to the "ingredient list" requirements on food packaging.  In *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308 (Mo. App. 2016), plaintiff brought a putative class action under the MMPA alleging that defendant misrepresented that its cupcake mix was "all natural" when it contained a certain chemical found in commercial baking powders.  The lawsuit also contained a claim for unjust enrichment.  The defendant moved to dismiss the claims because the ingredient label clearly disclosed the presence of the chemical and it was not plausible that a consumer would believe the "all natural" representation on the product (i.e. the "ingredient list defense").   The trial court dismissed both the MMPA and derivative unjust enrichment claims.  The Missouri Court of Appeals reversed and expressly rejected the notion that the "ingredient list" defense could defeat plaintiff's claim as a matter of law.  *Id.* at 312.  "The FDA does not require an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield from liability for that deception." *Id.* at 312-313.  "A reasonable consumer would expect that the ingredient list comports with the representations of the packaging…the manufacturer, not the consumer, is in a superior position to know and understand the ingredients in its product and whether the ingredients comport with its packaging." *Id.* at 313.  The Court of Appeals further stated that "[w]hile the presence of an ingredient list may be relevant to [defendant's] defense at trial, the 'ingredient list' defense cannot, as a matter of law, defeat an MMPA claim." *Id.*

The federally mandated disclaimer at issue in this case, while similar to the "ingredient list" in *Murphy,* differs in one crucial respect.  In *Murphy*, the consumer seeing "all natural" on the

7

front of the package could turn the package over and read the ingredient list which would, conceivably, disclose that the product was not all natural. In this case, even if Plaintiff or any other consumer read the back of the Cognium packaging and saw the FDA mandated disclosure it would not reveal that the information represented to them on the packaging was false (i.e., nothing revealed that there were not nine clinical studies supporting Cognium's effectiveness as represented by Defendant).

Defendant cites *Beardsall v. CVS Pharmacy, Inc.*, No. 16-C-6103, 2019 WL 1168103 (N.D. Ill. March 13, 2019) in which summary judgment was granted as to a claim under the MMPA because disclaimers and disclosures on the product packaging made clear to consumers that the product contained other ingredients in addition to aloe vera. However, since Defendant filed its Memorandum in Support of Its Motion for Summary Judgment the Seventh Circuit Court of Appeals issued its opinion addressing the labeling issues raised in that case. While judgment was ultimately affirmed, the basis for that holding was not that defendants were relieved from liability because of the ingredient list disclosure. The basis for that holding was the plaintiffs' testimony that the presence of preservatives in small amounts was acceptable and something they expected to be in the product precluded plaintiffs' claims. "The district court never suggested that the disclosure of the ingredients list necessarily meant that the label could not be misleading." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 978 (7th Cir. 2020). In other words, the plaintiffs had no standing based on their own admissions not because the ingredient list disclosure precluded defendant's liability.

Defendant also cites *Grawitch v. Charter Communications, Inc.*, No. 4:12-cv-1990, 2013 WL 253534 (E.D.Mo. Jan. 23, 2013) in which Judge Fleissig dismissed a putative class action based on written disclosures informing consumers that the increased internet speed advertised by

8

defendant was not guaranteed and that consumers would have to replace their modem to get the increased speed. That case is distinguishable. In that case, plaintiffs had received a notice that Charter had increased its available internet speeds free of charge but that in order to enjoy the speed increase they would need to upgrade their modem. There was not a false misrepresentation relied upon in order induce a purchase as no purchase was made and full written disclosure accompanied the representation at issue in that case. That is not the case here.

The analysis of the second disclaimer on the Cognium packaging is the same as the FDA mandated disclaimer. The second disclaimer states: "[c]onsult your healthcare professional prior to use if you have or suspect a medical condition, are taking prescription drugs, or if you are pregnant or lactating." Again, nothing in that disclaimer would lead a reasonable consumer to question the validity of the nine clinical studies referenced on the Cognium packaging in support of the structure/function claims made to the consumers.

Defendant asserts that Plaintiff misused the Cognium based on the disclaimers. However, Defendant's assertion is misplaced for two reasons. First, the directions on the package instruct the consumer to take 1 tablet in the morning and 1 tablet in the evening with a meal. Plaintiff testified that she took Cognium as directed for 60 straight days. (Ex. 1, p. 89-90). She followed the directions but noticed no improvement. Second, nothing that Plaintiff did following her purchase of the Cognium is relevant to the misrepresentation which induced her to purchase the product in the first place. Based on the claims being asserted by Plaintiff as set forth above, the disclaimers on the packaging would only be relevant if they would allow a "reasonable consumer" to question the validity of the nine clinical studies **at the time of purchase.** See *Hughes v. Ester C. Co.*, 330 F.Supp. 862, 871 (E.D.N.Y. Sept. 4, 2018). "Whether a reasonable

9

consumer would be deceived by a product label is generally a question of fact…" *Thornton v. Pinnacle Foods Group, LLC,* 2016 WL 4073713, at *3 (E.D.Mo. August 1, 2016).

As this court recognized in its Memorandum and Order, discovery in this case related to Plaintiff's individual claims will not commence until resolution of class certification. [Doc. #25]. While Plaintiff's position is that the issues raised by Defendant are not relevant to her MMPA claim under any circumstances nor is it an adequate defense, Defendant can certainly develop the record once merit discovery begins. Just as in *Murphy,* the presence of the disclaimers on the Cognium packaging *may* be relevant to Defendant's defense of misuse or whether a reasonable consumer would be misled by the statements on the Cognium packaging, but the disclaimers do not, as a matter of law, strip Plaintiff of her Article III standing to pursue her claims under the MMPA and the derivative unjust enrichment claim. Ultimately, the answer to the question posed by this Court in its Memorandum and Order is that the admissions of Plaintiff that she purchased Cognium in an attempt to treat symptoms of attention deficit disorder and that she did not consult a healthcare provider prior to using Cognium do not strip her of Article III standing to bring claims under the MMPA and for unjust enrichment.

**B. Plaintiff Can Show an Ascertainable Loss Under the MMPA and Has Standing to Proceed with Her Claims.**

To state a claim for unjust enrichment under Missouri law, Plaintiff must prove (1) Plaintiff conferred a benefit on the Defendant (i.e. payment of money); (2) the Defendant appreciated the benefit; and (3) Defendant accepted and retained the benefit under inequitable and/or unjust circumstances. *Hargis v. JLB Corp.*, 357 S.W.2d 574,586 (Mo. banc 2011). Defendant does not argue tha the first two elements of the cause of action are at issue. Rather, Defendant attacks the third element.

First, Defendant states that it tendered a refund check to Plaintiff which she refused. Defendant does not explain how the offer of a refund and the refusal impacts the unjust enrichment claim, but Judge Sippel has previously considered that argument in this case. In his Memorandum and Order denying Defendant's Motion to Dismiss, Judge Sippel stated that a "money-back guarantee does not prevent the common law cause of action of unjust enrichment, just as it does not prevent a MMPA statutory cause of action." [Doc. #19, p. 10].

Defendant's second argument rehashes the misuse argument raised in response to Plaintiff's MMPA claim. However, as Judge Sippel also found, if Defendant's misrepresentations convinced Plaintiff to purchase something she otherwise would not have, and if Defendant still has possession of Plaintiff's money from that purchase, then she has stated a claim for unjust enrichment. [Doc. #19, p. 10]. As stated previously, Plaintiff alleges in her Amended Complaint and in her deposition that she would not have purchased the Cognium had she known that there were fewer than the nine studies supporting the representations made on the packaging. There remain genuine issues of material fact and Defendant is not entitled to judgment as a matter of law on Plaintiff's claim of unjust enrichment.

## IV.     Conclusion

Defendant represented to Plaintiff that Cognium was clinically proven to improve memory and concentration based on nine clinical studies. Plaintiff alleges that at least two of those nine studies were retracted for fraud and data manipulation. Plaintiff alleges that she would not have purchased the Cognium had she known that fact and that she was damaged because she paid money for the Cognium on two occasions. Genuine issues of material fact remain and Defendant is not entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment should be denied.

11

Respectfully submitted,

/s/Jonathan E. Fortman
Jonathan E. Fortman (40319MO)
Law Office of Jonathan E. Fortman, LLC
250 St. Catherine Street
Florissant, MO 63031
Ph# (314) 522-2312
Fax: (314) 524-1519
Email:  jef@fortmanlaw.com

Steve A. Miller (8758CO)
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

John C. Kress (53396MO)
Kress Law, LLC
P.O. Box 6525
St. Louis, MO  63125
Ph.#:  (314) 631-3883
Fax:  (314) 332-1534
Email:  jckress@thekresslawfirm.com

**CERTFICATE OF SERVICE**

    A true and accurate copy of the foregoing has been served upon all parties this 29th day of April, 2021 by operation of the Court's electronic filing system.

    /s/ Jonathan E. Fortman