IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE VITELLO, on behalf of herself and others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>NATROL LLC,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)  No. 4:18-cv-915<br>)<br>)<br>)<br>)<br>) |

**<u>NATROL'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 2

ARGUMENT ................................................................................................................. 4

I. THE UNDISPUTED FACTS FORECLOSE ANY ABILITY TO ESTABLISH ASCERTAINABLE LOSS UNDER THE MMPA (COUNT I) ........................................................................................................ 4

    A. Plaintiff's Opposition Does Not Address The Issue Framed By The Court, As Ascertainable Loss Is Different From Article III Standing ................................................................................................. 5

    B. Missouri Law Requires Plaintiff To Show That She Was Denied The Benefit Of Her Bargain ........................................................ 7

        1. Representation About A Product And A Plaintiff's Knowledge Are Both Relevant To Determining Whether A Plaintiff Received That Benefit .................................. 8

        2. Whether A Plaintiff Received The Benefit Of Her Bargain Is A Separate Inquiry From Whether A Misrepresentation Was Made ........................................................... 9

    C. The Undisputed Facts Foreclose A Showing Of Ascertainable Loss ................................................................................................... 10

II. THE UNDISPUTED RECORD ALSO FORECLOSES PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT II) ............................................... 12

CONCLUSION ............................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases:** Page(s)

*Anderson v. Bass Pro Outdoor World, LLC*,
   355 F. Supp. 3d 830 (W.D. Mo. 2018) ................................................................... 7, 9, 11, 12

*Arcand v. Brother Int'l Corp.*,
   673 F. Supp. 2d 282 (D.N.J. 2009) ............................................................................ 9

*Beardsall v. CVS Pharmacy, Inc.*,
   No. 16-C-6103, 2019 WL 1168103 (N.D. Ill. Mar. 13, 2019) ............................... 6

*Beardsall v. CVS Pharmacy, Inc.*,
   953 F.3d 969 (7th Cir. 2020) ................................................................................... 6

*Bratton v. Hershey Co.*,
   No. 2:16-cv-4322-C NKL, 2018 WL 934899 (W.D. Mo. Feb. 16, 2018) ............. 8, 12

*Chochorowski v. Home Depot U.S.A.*,
   404 S.W.3d 220 (Mo. 2013) .................................................................................... 8

*Gertz v. Toyota Motor Corp.*,
   Case No. CV10-1089 PSG (VBKx), 2011 WL 13142144
   (C.D. Cal. Apr. 28, 2011) ........................................................................................ 9

*Grawitch v. Charter Communications, Inc.*,
   No. 4:12-cv-1990, 2013 WL 253534 (E.D. Mo. Jan. 23, 2013),
   *aff'd*, 750 F.3d 956 (8th Cir. 2014) ......................................................................... 9

*Hughes v. Ester C Co.*,
   330 F. Supp. 3d 862 (E.D.N.Y. 2018) .................................................................... 5

*In re Avandia Mktg. Sales Pracs. & Prods. Liab. Litig.*,
   639 F. App'x 866 (3d Cir. 2016) ............................................................................. 11-12

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
   MDL No. 08-1967, 2011 WL 6740338 (W.D. Mo. Dec. 22, 2011) ....................... 8, 11, 12

*Johnson v. Atkins Nutrationals, Inc.*,
   Case No. 2:16-cv-4213-MDH, 2017 WL 6420199 (W.D. Mo. Mar. 29, 2017) .... 6

*Lokai Holdings, LLC v. Twin Tiger USA, LLC*,
   306 F. Supp. 3d 629 (S.D.N.Y. 2018) .................................................................... 9, 10

|  | Page(s) |
|---|---|
| *Mikhlin v. Johnson & Johnson*, No. 4:14-CV-881 RLW, 2014 WL 6084004 (E.D. Mo. Nov. 13, 2014) | 11 |
| *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308 (Mo. Ct. App. 2016) | 6 |
| *Owen v. Gen. Motors Corp.*, 533 F.3d 913 (8th Cir. 2008) | 5 |
| *Roberts v. BJC Health System*, 391 S.W.3d 433 (Mo. 2013) | 5 |
| *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855 (Mo. 2008) | 8 |
| *Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883 (Mo. Ct. App. 1994) | 7 |
| *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007 (E.D. Mo. 2014) | 7, 8, 9, 12 |
| *Thornton v. Pinnacle Foods Grp. LLC*, No. 4:16-CV-00158 JAR, 2016 WL 4073713 (E.D. Mo. Aug. 1, 2016) | 6 |
| *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888 (8th Cir. 2014) | 12 |
| *Willard v. Bic Corp.*, 788 F. Supp. 1059 (W.D. Mo. 1991) | 9 |
| *Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836 (Mo. Ct. App. 2015) | 5 |

**Statutes and Rules:**

| | |
|---|---|
| Mo. Rev. Stat. § 407.025 | 5 |
| Mo. Loc. R. 401(E) | 2 |

**INTRODUCTION**

The Court invited Plaintiff to address whether her admitted "improper substitution of Cognium for Adderall without the advice of a physician undermines her MMPA and unjust enrichment claims." [Memorandum & Order ("Mem. & Order") at 7 (4/1/21) (Dkt. 84)] The legal question presented is whether the value of Cognium, as represented, was less than the value Plaintiff received, causing her to suffer an ascertainable loss under the MMPA. Plaintiff admits that she disregarded express warnings on the label—stating both that Cognium is not intended to treat any disease and that she should consult with a physician regarding her prescriptions—and unilaterally decided to use Cognium to treat ADD, replacing the Adderall prescribed by her physician. Because no consumer could read the representations on the Cognium label and reasonably conclude that it is a treatment for a disease like ADD, Plaintiff did not suffer an ascertainable loss under the MMPA when she purchased Cognium to treat her ADD.

Plaintiff does not squarely address this question in her brief. Instead, Plaintiff attempts to reframe the issue as a challenge to her Article III standing, an entirely different question. [Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Opp.") at 3–11 (4/29/21) (Dkt. 85)] Similarly, rather than addressing her disregard of clear warnings against using Cognium to treat a disease like ADD, Plaintiff attempts to reframe the issue by reference to the number of clinical studies substantiating Cognium marketing claims, advancing discursive discussions of pleading standards at the motion-to-dismiss stage and the viability of an ingredient-list defense. [*Id.*] No matter how many clinical studies show the efficacy of Cognium for its intended use, Plaintiff cannot show that she suffered an ascertainable loss when she used Cognium to treat ADD.

Bottom line, Plaintiff has no answer to the Court's question. For the reasons set forth in Natrol's original Memorandum [*see* Memorandum in Support of Natrol's Motion for Summary Judgment ("Mem.") at 6–8, 13–14 (10/25/19) (Dkt. 52, 54)] and below, Natrol respectfully asks the Court to enter summary judgment in Natrol's favor. The MMPA and unjust enrichment claims fail as a matter of law, and neither the Court nor the parties should be required to invest additional resources in a time-consuming and costly class certification process that can and should be avoided.

## **FACTUAL BACKGROUND**

Natrol incorporates by reference the background section from its original Memorandum (Mem. at 2–6) and its separate statement of facts (Natrol's Statement of Uncontroverted Material Facts ("SUMF") (10/25/19) (Dkt. 53, 55)). Because Plaintiff did not respond to Natrol's SUMF, she has admitted the absence of any material factual dispute. *See* Local Rule 4.01(E) (requiring a party opposing summary judgment to submit a "Response to Statement of Material Facts" and providing that "[a]ll matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party"). As a result, the following facts are undisputed:

- In 2004, Plaintiff was diagnosed with ADD, which "makes it difficult for [her] to remember things and to concentrate."

- Since 2004, Plaintiff has seen her doctor for her ADD approximately "once every six months," or "[m]aybe once" or "twice a year."

- Plaintiff's ADD symptoms include "[b]eing forgetful, disorganized, scatterbrained . . . hyper, but not really getting anything done," and not being able to "retain anything."

- To treat these symptoms, Plaintiff's physician prescribed Adderall, which is a "controlled substance" that requires a prescription.

- Plaintiff testified that "[i]f I don't take Adderall I can't retain anything." When Plaintiff does not take her Adderall, it is "common" for her to "forget [her] purse or lose [her] keys or . . . not be able to recall anything."

- Plaintiff "[a]bsolutely" notices "a pretty significant difference in [her] memory and concentration when [she is] taking Adderall." Plaintiff relies on Adderall to be able to concentrate.

- On June 22, 2017, Plaintiff saw Cognium at Walmart and read the box; the representations on the box were the only representations upon which she relied when she decided to purchase Cognium.

- Before consuming Cognium, Plaintiff read the carton and bottle, as well as a pamphlet that was inside.

- The cartons of Cognium Plaintiff purchased both stated as follows: "Consult your healthcare professional prior to use if you have or suspect a medical condition, are taking prescription drugs, or if you are pregnant or lactating."  Nevertheless, Plaintiff did not consult a healthcare professional.

- The same language (i.e., "Consult your healthcare professional prior to use if you have or suspect a medical condition, are taking prescription drugs, or if you are pregnant or lactating") appears on the bottles of Cognium Plaintiff purchased.

- Plaintiff read (or is "pretty sure" she read) this warning prior to consuming Cognium, and she is "sure it was there because it's on all the supplements."

- The bottles and cartons Plaintiff purchased also state:  "These statements have not been evaluated by the food and drug administration. This product is not intended to diagnose, treat, cure, or prevent any disease."

- Plaintiff is aware that "most supplements have those [disclosures] on there," and she "probably knew they existed [for Cognium] because they're on most supplements."

- Plaintiff purchased Cognium in pursuit of "any glimmer of hope that I have, you know, for anything that I wouldn't have to be taking a medication."

- Plaintiff stopped taking Adderall because she hoped Cognium would be a better alternative to Adderall and to treat the same ADD symptoms that she used Adderall to treat.  In particular, Plaintiff took Cognium because she hoped it would improve her memory.

- Plaintiff stopped taking Adderall approximately "five to seven days prior" to starting Cognium.  She wanted to "do a comparison" of Cognium to Adderall; as she testified, "I would never know if that supplement works if I took them together because the medication that I take works, but I wouldn't know if the supplement did."

- Plaintiff stopped taking Adderall "cold turkey" before taking Cognium, and she did not consult her physician about this decision. At that point in June 2017, Plaintiff had been taking Adderall regularly for approximately 13 years.

3

- Plaintiff never discussed Cognium with her physician.  Plaintiff did not consult any healthcare professional prior to using Cognium.

- Plaintiff admits the possibility that her "ADD could have caused [her] to not feel the effects of Cognium."

- While she "can't speak for others," Plaintiff contends that Cognium is ineffective because she "took it and it didn't work" for her.

- When asked about her basis for asserting that Cognium does not work, Plaintiff testified that she felt "almost exactly the same on Cognium as before I was on Adderall."  In other words, she "couldn't remember anything," and in conversation she was "all over the place" and "scatterbrained."

- Plaintiff explained that her basis for asserting that Cognium did not work for her was comparing how she was feeling while taking Cognium to how she was feeling when she depended on Adderall.

[SUMF ¶¶ 3-4, 13-16, 18-20, 22–26, 28, 34–39, 42-43]  The undisputed facts confirm that "the only remaining question is a legal one:  Do those facts preclude Vitello from bringing her MMPA and unjust enrichment claims?"  [Mem. & Order at 6–7]

## ARGUMENT

**I.      THE UNDISPUTED FACTS FORECLOSE ANY ABILITY TO ESTABLISH ASCERTAINABLE LOSS UNDER THE MMPA (COUNT I).**

Ascertainable loss is a necessary element of an MMPA claim, and Plaintiff must show that she was denied the "benefit of the bargain," *i.e.*, that the value of Cognium as represented is less than the value Plaintiff received.  As already explained, Plaintiff knew that the label warned expressly against using Cognium to treat a disease and directed her to consult a physician with respect to any prescription medications.  Plaintiff nevertheless decided to take Cognium to treat ADD, after quitting Adderall cold turkey and without consulting her physician.  Plaintiff suffered no ascertainable loss, because no reasonable consumer could conclude that treating ADD as a substitute for Adderall was part of the "benefit of the bargain" when purchasing Cognium, regardless of how many clinical studies establish the efficacy of Cognium for its intended uses.

4

### A. Plaintiff's Opposition Does Not Address The Issue Framed By The Court, As Ascertainable Loss Is Different From Article III Standing.

There is no merit to Plaintiff's effort to lower (or completely replace) the bar by arguing that the Court's question "is, in effect, whether Plaintiff has Article III standing to make her claims." [Opp. at 3] To establish liability under the MMPA, Plaintiff must allege and prove that she "suffer[ed] an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020." Mo. Rev. Stat. § 407.025. Here, the question is whether Plaintiff can show ascertainable loss given her admissions, not whether she has Article III standing to sue in the first place.

As the Missouri Supreme Court made clear in *Roberts v. BJC Health System*, 391 S.W.3d 433 (Mo. 2013), the Article III standing requirement is very different from the elements of liability under the MMPA and can be satisfied by showing only "*potential liability*" to "demonstrate a *legally cognizable interest* in this litigation and a *threatened injury*." *Id.* at 438. "Establishing standing by showing such a threatened injury, however, does not establish that Plaintiffs established [an essential MMPA] element necessary for their claims to survive summary judgment." *Id.*

Plaintiff devotes the bulk of her Opposition to addressing the inapplicable question of Article III standing, and she fails to engage with many of the cases cited in Natrol's Memorandum. These authorities demonstrate that summary judgment is appropriate when a plaintiff cannot establish the statutory elements of her MMPA claim. *E.g.*, *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 924 (8th Cir. 2008) (affirming summary judgment on MMPA claim for lack of injury and causation); *Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 842-43 (Mo. Ct. App. 2015) (same); *see also Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 873 (E.D.N.Y. 2018) (entering summary judgment in favor of defendant for lack of falsity).

5

Instead, Plaintiff relies on cases that address *pleading standards* at the motion-to-dismiss stage, which neither address the Court's question nor undermine Natrol's motion for summary judgment. *Johnson v. Atkins Nutrationals, Inc.*, No. 2:16-cv-4213-MDH, 2017 WL 6420199, at *12 (W.D. Mo. Mar. 29, 2017) (granting in part and denying in part motion to dismiss and holding that plaintiff plausibly alleged Article III standing in pleading); *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 312–13 (Mo. Ct. App. 2016) (finding that, at pleading stage, the presence of an ingredient list does not foreclose MMPA claims); *Thornton v. Pinnacle Foods Grp. LLC*, No. 4:16-CV-00158 JAR, 2016 WL 4073713, at *3 (E.D. Mo. Aug. 1, 2016) (same).

Indeed, Plaintiff spends much of her brief addressing an "ingredient-list defense" that has not been raised in this case. [Opp. at 7–9]  While Plaintiff's argument misses the point entirely, it appears to have been driven by Natrol's citation (Mem. at 8) to *Beardsall v. CVS Pharmacy, Inc.*, No. 16-C-6103, 2019 WL 1168103, at *4-5 (N.D. Ill. Mar. 13, 2019) (entering summary judgment in favor of defendant, including because of the presence of an ingredient list).  Again, the question presented by Natrol's Motion and posed by the Court is whether Plaintiff can overcome her undisputed admissions that foreclose her ability to establish an ascertainable loss.

No matter the purpose, *Beardsall* provides no support for Plaintiff's position.  To the contrary, the trial court's decision in that case was affirmed not because of an ingredient list, but because of *key admissions* by the plaintiffs (*i.e.*, that they expected ingredients other than aloe vera in the product) left them unable to prevail on their claims as a matter of law. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 977 (7th Cir. 2020) ("But plaintiffs conceded in their summary judgment brief and deposition testimony that the 'presence of preservatives—in reasonably small amounts—was acceptable and something they *expected*,' and that '[n]o [p]laintiff took the label to mean that there was absolutely nothing other than aloe vera in the

6

bottle."). That reasoning applies equally here. It is not the mere presence of the warnings on the label that foreclose Plaintiff's claim; rather, it is her admission that she read and understood those warnings, chose to ignore them, and attempted to use Cognium to treat ADD as a substitute for the Adderall prescribed by her physician.

In sum, Plaintiff's discussion of Article III standing, pleading standards at the motion-to-dismiss stage, and the ingredient-list defense do nothing to answer the Court's question whether the undisputed facts "preclude Vitello from bringing her MMPA and unjust enrichment claims," because her "improper substitution of Cognium for Adderall without the advice of a physician undermines her MMPA and unjust enrichment claims." [Mem. & Order at 6–7]

### B. Missouri Law Requires Plaintiff To Show That She Was Denied The Benefit Of Her Bargain.

Plaintiff lacks any substantive response to the Court's question whether her admissions preclude a showing of ascertainable loss under the MMPA. Missouri law requires Plaintiff to show that she was denied the "benefit of the bargain," such that Cognium's actual value was less than what she paid for the product "as represented" at the time of purchase, in order to prove the statutory requirement of an ascertainable loss. *Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. Ct. App. 1994); *see also Anderson v. Bass Pro Outdoor World, LLC*, 355 F. Supp. 3d 830, 837 (W.D. Mo. 2018) (describing "Missouri cases equating 'ascertainable loss' with the 'benefit of the bargain' rule"); *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014) ("An ascertainable loss of money or property is an essential element of a cause of action brought under the MMPA. Missouri courts apply the 'benefit of the bargain' rule when determining if a plaintiff has suffered an ascertainable loss under the MMPA.") (citations omitted). Plaintiff's admissions leave her unable to make this showing as a matter of law.

7

> 1. **Representations About A Product And A Plaintiff's Knowledge Are Both Relevant To Determining Whether A Plaintiff Received That Benefit.**

To determine whether a plaintiff was denied the benefit of the bargain (so as to suffer an ascertainable loss), Missouri law requires courts to inquire into the nature of the bargain. Part of this inquiry involves examining the defendant's representations about the product. *See, e.g.*, *id.* (holding that plaintiff's MMPA claim failed because she received the benefit of the bargain when the product was "what it had always purported to be—a single-use vial" of eye drops); *see also Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 232 (Mo. 2013) (affirming summary judgment for defendant on MMPA claim when written contract accurately indicated that a damage-waiver fee was optional).

Also relevant is a plaintiff's knowledge at the time she purchased the product. *See, e.g.*, *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 862 (Mo. 2008) (plaintiffs who knew the true nature of how Diet Coke is sweetened and bought the product anyway suffered no injury in fact, precluding class treatment of MMPA claim); *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, MDL No. 08-1967, 2011 WL 6740338, at *1 (W.D. Mo. Dec. 22, 2011) ("Individuals who knew about BPA's existence and the surrounding controversy before purchasing Defendants' products have no injury."); *Bratton v. Hershey Co.*, No. 2:16-cv-4322-C NKL, 2018 WL 934899, at *2–3, 5 (W.D. Mo. Feb. 16, 2018) (granting summary judgment for defendant on MMPA and unjust-enrichment claims, including on the grounds that a plaintiff who purchased candy containers with knowledge of slack fill suffered no MMPA injury).

In other words, a plaintiff who receives what she knowingly purchased cannot establish an ascertainable loss. It follows that a plaintiff who knowingly disregards product instructions or disclaimers cannot later complain that she suffered a statutory injury. *See Chochorowski*, 404 S.W.3d at 232 (affirming summary judgment on MMPA claim when plaintiff "elected the

8

damage waiver's benefit by initialing the agreement's special terms and conditions and signing the agreement," when "the agreement itself made clear that she had the option to decline the waiver," foreclosing her argument that she was injured by paying the waiver fee); *Willard v. Bic Corp.*, 788 F. Supp. 1059, 1070–71 (W.D. Mo. 1991) (entering summary judgment for defendant on MMPA claim where plaintiff admitted to reading a Bic lighter's instructions and warnings).[1]

### 2. Whether A Plaintiff Received The Benefit Of Her Bargain Is A Separate Inquiry From Whether A Misrepresentation Was Made.

Plaintiff's focus on the number of clinical studies demonstrating the efficacy of Cognium for its intended use is also beside the point. A plaintiff who receives the benefit of her bargain is foreclosed from showing an ascertainable loss under the MMPA—regardless of whether there was a misrepresentation or other violation of the MMPA. *See Anderson*, 355 F. Supp. 3d at 838 (holding that lack of an ascertainable loss is a separate question from whether a violation of the MMPA occurred); *Thompson*, 993 F. Supp. 2d at 1012 (holding that the benefit-of-the-bargain rule for ascertainable loss applies regardless whether plaintiff alleges a misrepresentation).

Accordingly, Plaintiff's attempt (at 8–9) to distinguish *Grawitch v. Charter Communications, Inc.*, No. 4:12-cv-1990, 2013 WL 253534 (E.D. Mo. Jan. 23, 2013), *aff'd*, 750 F.3d 956 (8th Cir. 2014), on the purported grounds that it did not involve a misrepresentation is

---

[1] *See also Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 303 (D.N.J. 2009) (holding that plaintiffs suffered no ascertainable loss under consumer statute because, "in purchasing a product that comes with an explicit disclaimer of its limits, consumers cannot later complain that the product *should* yield more than explicitly promised"); *Gertz v. Toyota Motor Corp.*, Case No. CV 10-1089 PSG (VBKx), 2011 WL 13142144, at *7, 12 n.15 (C.D. Cal. Apr. 28, 2011) (holding that plaintiffs could not bring claims under consumer statute or for breach of warranty related to fuel mileage if they ignored "instructions in the Owner's Manual regarding when to add more fuel," and also ignored the "'add-fuel' warning light"); *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 641 (S.D.N.Y. 2018) (affirming summary judgment on consumer-statute claim when disclaimer made it "unreasonable for any consumer or retailer to believe that water will remain permanently in the bracelet").

9

both of no moment (because a plaintiff must show an ascertainable loss under the benefit-of-the-bargain rule regardless) and incorrect (because the plaintiffs in that case *did* allege that the defendant misrepresented the conditions under which plaintiffs would receive higher download speeds). *Id.* at *1-2. The court held that the plaintiffs could not show an ascertainable loss—including because of an express disclaimer and notification that informed the plaintiffs they would need new modems to enjoy the faster internet speeds—irrespective of their misrepresentation allegations. *Id.* at *3. Likewise here, Plaintiff chose to disregard warnings on the Cognium label and cannot now complain that it was ineffective to treat her ADD affliction.

### C.     The Undisputed Facts Foreclose A Showing Of Ascertainable Loss.

Natrol is entitled to judgment because the undisputed record, including Plaintiff's own admissions, preclude her from showing that she was denied the benefit of her bargain when she purchased Cognium. There is no dispute that she purchased Cognium to treat ADD as a replacement for Adderall, despite her knowledge of warnings that Cognium was "not intended to diagnose, treat, cure, or prevent any disease" and to "[c]onsult your healthcare professional prior to use if you have or suspect a medical condition [or] are taking prescription drugs." [SUMF ¶¶ 35–38] As Natrol's representations make clear, the "benefit of the bargain" did not extend to treating Plaintiff's ADD symptoms or serving as an alternative to Adderall.

Rather than addressing this shortcoming in her case, Plaintiff argues that Natrol misrepresented that nine clinical studies showed the effectiveness of Cognium's active ingredient for its intended use, when two of the journal articles describing such studies were retracted or withdrawn. [Opp. at 6–7, 9] Plaintiff misses the point entirely when she argues that the warnings on Cognium packaging would not "lead a reasonable consumer to question the validity of the nine clinical studies referenced on the Cognium packaging in support of the structure/function claims made to the consumers." [*Id.* at 9]

10

Even if consumers who purchase Cognium for its intended use would prefer to see journal articles on nine clinical studies (as opposed to seven), Plaintiff did not put Cognium to its intended use, and she was not denied the benefit of the bargain when she disregarded warnings and attempted to use Cognium to treat ADD as a substitute for her physician-prescribed Adderall. And as explained above, whether Plaintiff suffered an ascertainable loss because she did not receive the benefit of her bargain is a wholly separate question from whether there was a material misrepresentation on the Cognium label. *See Anderson*, 355 F. Supp. 3d at 838; *Thompson*, 993 F. Supp. 2d at 1012.[2]

Finally, despite Plaintiff's argument to the contrary (at 4-5), the mere fact that Plaintiff purchased Cognium does not amount an ascertainable loss under the MMPA. *See In re Bisphenol-A (BPA)*, 2011 WL 6740338, at *3 ("Plaintiffs essentially are claiming that their purchases, *ipso facto*, caused an economic loss. There is no authority, in Missouri or otherwise, for this proposition.") (quotations and citations omitted). Indeed, when a plaintiff receives the benefit of the bargain, establishing an ascertainable loss requires more than an unsupported allegation that the plaintiff would not have made the purchase had a disclosure been added or changed. *See Mikhlin v. Johnson & Johnson*, No. 4:14-CV-881 RLW, 2014 WL 6084004, at *3 (E.D. Mo. Nov. 13, 2014) (MMPA plaintiffs who "contend that they would not have purchased and used Johnson's® Baby Powder had they known about the increased ovarian cancer risk" suffered no ascertainable loss when they received the use and benefit of the products); *In re*

---

[2]  Plaintiff has offered no explanation (much less evidence to create a genuine dispute of material fact) as to why the representation of "nine" studies induced her to believe the product could treat ADD or replace Adderall. Nor does Plaintiff dispute that she has purchased health supplements that were not supported by nine studies, nor does she dispute that she has purchased health supplements without knowing how many studies supported them. [SUMF ¶¶ 7–8]

11

*Avandia Mktg. Sales Pracs. & Prods. Liab. Litig.*, 639 F. App'x 866, 869 (3d Cir. 2016) (MMPA plaintiff who received full use of medication could not establish an ascertainable loss).

## II. THE UNDISPUTED RECORD ALSO FORECLOSES PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT II).

Plaintiff's inability to show that she was denied the benefit of her bargain dooms not only her MMPA claim, but also her unjust-enrichment claim. As Missouri courts have repeatedly held, a plaintiff who fails to establish an ascertainable loss under the MMPA cannot pursue a claim for unjust enrichment under Missouri law. *See, e.g.*, *Bratton*, 2018 WL 934899, at *4 (entering summary judgment for defendant on unjust-enrichment claim for same reasons as MMPA claim); *Anderson*, 355 F. Supp. 3d at 839 ("[B]ecause the parties received the benefits they bargained for, there is no unjust enrichment."); *Thompson*, 993 F. Supp. 2d at 1013 (holding that a plaintiff who "failed to meet the ascertainable loss requirement" under the MMPA could not pursue an unjust-enrichment claim); *In re Bisphenol-A (BPA)*, 2011 WL 6740338, at *4 ("The Court adheres to its prior holding that those consumers who fully used Defendants' products cannot assert MMPA or warranty claims. And the Court expands that holding to include Plaintiffs' unjust enrichment claims.").

This makes sense, given that Plaintiff cannot show that it would be "unjust" for Natrol to retain Plaintiff's purchase price (which it did attempt to refund) because she was disappointed that Cognium did not effectively treat ADD symptoms as a substitute for Adderall after being warned that Cognium is not intended to treat a disease and to first seek medical advice related to her existing prescriptions. *See Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 897-98 (8th Cir. 2014) (applying Missouri law and affirming summary judgment on unjust-enrichment theory for the same reasons the plaintiff's MMPA claim failed on the merits).

12

## CONCLUSION

For all of the foregoing reasons, Natrol respectfully asks the Court to enter summary judgment in its favor on Counts I and II, neither of which is viable as a result of Plaintiff's admissions that she unilaterally decided to use Cognium to treat ADD symptoms and replace an Adderall prescription, despite being warned that Cognium is not intended to treat any disease and to seek medical advice relating to her prescriptions before taking Cognium.

Dated:  May 7, 2021

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

By: /s/ Lawrence G. Scarborough

Lawrence G. Scarborough (admitted *pro hac vice*)
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000 (telephone)
(602) 364-7070 (facsimile)
lgscarborough@bclplaw.com

Jacob A. Kramer (admitted *pro hac vice*)
1155 F Street, NW
Washington, D.C. 20004
(202) 508-6000 (telephone)
(202) 508-6200 (facsimile)
jake.kramer@bclplaw.com

Alicia Ragsdale Olszeski, #66168MO
Steven J. Alagna, #68980MO
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000 (telephone)
(314) 259-2020 (facsimile)
ali.olszeski@bclplaw.com
steven.alagna@bclplaw.com

*Attorneys for Defendant Natrol LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 7, 2021, a true and correct copy of the foregoing *Natrol's Reply Memorandum in Support of Its Motion for Summary Judgment* was served electronically on all counsel of record via the Court's ECF system. An unredacted copy of the foregoing was also served on all counsel of record via email.

/s/ Lawrence G. Scarborough