UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE VITELLO, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  Case No. 4:18-cv-00915-SEP |
| | ) |
| NATROL, LLC, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendant Natrol's Motion for Summary Judgment (Doc. [51]). The Motion is fully briefed. For the reasons set forth below, the Motion is granted.

### FACTS AND BACKGROUND

Plaintiff Christine Vitello brings this action individually and on behalf of others similarly situated, alleging Defendant Natrol, LLC, violated the Missouri Merchandising Practices Act (MMPA) and that Natrol is liable to purchasers of its product, Cognium, for unjust enrichment. Cognium is a "nutraceutical" that, according to Natrol's advertising, improves memory and concentration for consumers who ingest it twice daily over a period of four weeks. Doc. [80] ¶ 2. According to Cognium's packaging, the nutraceutical is "powered" by Cera-Q, a natural protein found in silkworm cocoons. *See, e.g.*, Doc. [80] ¶¶ 23, 26. In her Amended Complaint, Vitello alleges that Natrol advertised that nine clinical studies supported its efficacy, when in fact two of those studies had been discredited. *Id.* ¶ 2.

Vitello suffers from attention-deficit disorder (ADD), and she had been taking Adderall to treat her ADD since 2004. Doc. [56-3] at 21.[1] In June 2017, she stopped taking Adderall and began taking Cognium, hoping "Cognium would be a better alternative to Adderall." *Id.* at 29. Vitello claims she took Cognium according to the directions provided by Natrol but did not experience any improvement in her memory, concentration, or cognition. Doc. [80] ¶¶ 90-91. She contends that she would not have purchased Cognium had Natrol not made the representations concerning the product's allegedly proven results. *Id.* ¶ 92.

---

[1] All citations to Doc. [56-3] use page numbers assigned by the Court's docketing system.

Vitello seeks damages as well as establishment of a Missouri consumer subclass under the MMPA and a nationwide class under the doctrine of unjust enrichment. *See* Doc. [36] at 4, 6. In the Case Management Order, the Court bifurcated discovery, allowing the parties to proceed first on discovery related to class certification. Discovery related to Vitello's individual claim is stayed until after the Court's ruling on class certification. Doc. [25].

Natrol moved for summary judgment on Vitello's individual claim on October 25, 2019. Doc. [51]. In response, Vitello filed a Rule 56(d) Motion, stating that she could not respond because individual discovery had not yet commenced. Doc. [66]. On March 31, 2021, the Court issued a Memorandum and Order (the "Order") ruling on the Motion for Summary Judgment. Doc. [84]. The Court categorized Natrol's arguments for summary judgment as follows:

(a) that Plaintiff cannot show ascertainable loss for the purposes of the MMPA because she admits that she discontinued taking Adderall when she started taking Cognium and did not consult a healthcare professional, in violation of the product's warnings, Doc. [54] at 7-8;

(b) that Plaintiff has "no admissible evidence of Cognium's 'actual value,'" which is required to prove that she experienced an ascertainable loss under the MMPA, *id.* at 9; and

(c) that Plaintiff cannot show any causal connection between any allegedly unlawful practice and her purported loss because she discontinued taking Adderall when she started taking Cognium, *id.* at 11-12.

Doc. [84] at 5. The Court found that Natrol's arguments as to the second and third of those issues were premature, but that the first argument was "subtly but significantly different." *Id.* at 6. Because the facts Natrol presents regarding Vitello's admissions are undisputed, *see id.* at 6, the only remaining question is a legal one, ripe for resolution at this stage: Do Vitello's admissions preclude her from bringing MMPA and unjust enrichment claims? The Court directed Vitello to respond to that question. *See* Doc. [84] at 8. That issue is fully briefed and before the Court. All other arguments on summary judgment were denied without prejudice. *Id.*

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment if it finds that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

2

(1986).  "A genuine issue of material fact exists if a reasonable jury could return a verdict for" the non-movant.  *Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1051 (8th Cir. 2012) (quoting *Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 397 (8th Cir. 2011)).  "As a general rule, summary judgment is proper 'only after the nonmovant has had adequate time for discovery.'"  *Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.*, 687 F.3d 1045, 1049 (8th Cir. 2012) (quoting *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999)).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323 (internal quotations marks omitted).  The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'"  *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist.*, 528 F.3d 1074, 1079 (8th Cir. 2008)).  The court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc'y*, 210 F.3d 845, 847 (8th Cir. 2000) (Bennett, C.D.J., dissenting).  The court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim."  *Id.*

**DISCUSSION**

**I.  PLAINTIFF CANNOT SHOW ASCERTAINABLE LOSS FOR PURPOSES OF THE MMPA.**

The MMPA prohibits "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise."  Mo. Rev. Stat. § 407.020.1.  To succeed on an MMPA claim, a plaintiff must establish that she "(1) purchased merchandise . . . from defendants; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful" under Mo. Rev. Stat. § 407.020.  *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 311 (Mo. Ct. App. 2016); *see* Mo. Rev. Stat. § 407.025.1.  Applying that standard to Vitello's MMPA claim:  in order to prevail, she must demonstrate that she suffered an "ascertainable loss of money or property" as a result of the inclusion of retracted studies on Cognium's packaging.

Ascertainable loss in Missouri fraud and deceit cases is measured by the "benefit-of-the-bargain rule." *See Murphy,* 503 S.W.3d at 313 ("The [benefit-of-the-bargain] rule is also applicable in MMPA cases to meet the element of ascertainable loss."); *see also Thompson v. Allergan USA, Inc*. 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014) ("Missouri courts apply the 'benefit of the bargain' rule when determining if a plaintiff has suffered an ascertainable loss under the MMPA."). Under that rule, the proper measure of damages where the claimant purchases and retains the subject property is "the difference between the actual value of the property at the time of the sale and what its value would have been if the representations had been true, for the purchaser is entitled to the full benefits of [her] bargain." *Kendrick v. Ryus*, 123 S.W. 937, 939 (Mo. 1909); *see Murphy*, 503 S.W.3d at 313. If the Court determines that a buyer received the benefit of the bargain, that buyer did not suffer an ascertainable loss. *Thompson*, 993 F. Supp. 2d at 1012.

To establish that she did not receive the benefit of the bargain, Vitello must demonstrate that the actual value of Cognium is less than the value Natrol advertised, and that she therefore lost the difference between the product's *as-advertised* value and its *actual* value. As summarized in the Court's Order, Natrol argues that:

> the manner in which Plaintiff used Cognium—more accurately, the fact that she misused it—precludes her from establishing "ascertainable loss" for the purposes of her MMPA claim, Doc. [54] at 7-8, and from showing that it was "unjust for Natrol to retain a benefit" from her purchase for the purposes of unjust enrichment, *id.* at 14. The facts underlying that argument genuinely are undisputed, coming from Plaintiff's own deposition testimony. Cognium's packaging included two relevant warnings: Cognium "is not intended to diagnose, treat, cure, or prevent any disease," *id.* at 5, and consumers should "consult [their] healthcare professional prior to use if [they] have or suspect a medical condition or are taking prescription drugs," Doc. [56-2] ¶ 2; *id.* at 15; Doc. [54] at 7. Plaintiff admits that, despite these warnings, she stopped taking Adderall and began taking Cognium, hoping that "Cognium would be a better alternative to Adderall." Doc. [56-3] at 29. Vitello also admits that she did not consult her doctor prior to using Cognium. *Id.* at 30-31, 50. Natrol argues that Vitello's own admitted conduct precludes her from prevailing on her MMPA and unjust enrichment claims as a matter of law.

Doc. [84] at 6. The Court thus directed Vitello to "respond to Defendant's argument that Plaintiff's admissions regarding her use of Cognium preclude her from bringing her MMPA and unjust enrichment claims." *See* Doc. [84] at 8.

4

Because this issue has been raised on summary judgment, and the Court has already found that Natrol satisfied its initial burden of demonstrating "the absence of a genuine dispute of material fact," *Celotex*, 477 U.S. at 323; *see* Doc. [84] at 6-7, it is now Vitello's burden to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial,'" *Farver*, 931 F.3d at 811 (quoting *Wingate*, 528 F.3d at 1079), or to demonstrate that the argument fails as a matter of law. Vitello fails to meet that burden. In fact, Vitello does not even respond to the Court's question.

Instead of arguing that she can establish ascertainable loss despite her admissions, Vitello improperly reframes the issue as an Article III standing challenge. *See* Doc. [85] at 7-14.[2] *Compare* Doc. [85] at 7 ("The question presented by this Court in its Memorandum and Order is, in effect, whether Plaintiff has Article III standing to make her claims."), *with* Doc. [84] at 8 (ordering Plaintiff to "respond to Defendant's argument that Plaintiff's admission regarding her use of Cognium undermines her MMPA and unjust enrichment claims"). In fact, as Natrol correctly points out, Article III standing is not at issue. *See* Doc. [86] at 9. Article III standing requirements differ from the elements of liability under the MMPA. *See Roberts v. BJC Health Sys.*, 391 S.W.3d 433, 438 (Mo. banc 2013). Standing can be satisfied by showing only "*potential liability*" to "demonstrate a *legally cognizable interest* in this litigation and a *threatened injury*," but a threatened injury is not enough to sustain a claim on summary judgment. *Id.* (emphasis in original) (Article III standing by demonstrating a threatened injury "does not establish that [p]laintiffs established the requisite damages element necessary for their claims to survive summary judgment"). Thus, Vitello's standing arguments are beside the point.

Vitello's argument that her MMPA claim should survive because her allegations "set forth a straightforward claim under the MMPA" similarly misses the point. Doc. [85] at 9. Successfully *pleading* the MMPA claim is not enough to survive summary judgment. Rather, Vitello must show that her admissions about her use of the product do not preclude her from establishing ascertainable loss. In attempting to do so, Vitello misunderstands the relevance of the disclaimers on Cognium's packaging. She states: "[The] disclaimer[s] would not cause a 'reasonable person' to question the statement that Cognium 'has been clinically proven effective

---

[2] Vitello also incorrectly states that if she does have standing, then the action proceeds to class certification because the Court denied the other grounds for summary judgment. Doc. [85] at 7. Vitello is again mistaken. The Court denied the other summary judgment grounds because they were premature, *without prejudice to refiling* on a more mature record. *See* Doc. [84] at 7 n.3, 8.

5

in nine clinical trials' and does not excuse the failure of Defendant to disclose that at least two of those studies were retracted." Doc. [85] at 10-11.[3] That is unresponsive to Natrol's argument.[4] Natrol does not contend the disclaimers preclude a finding on the first, second, or fourth elements of the MMPA claim. It contends only that they preclude a finding on the third element—ascertainable loss.

Vitello does not mention Natrol's misuse argument until the final two paragraphs of the MMPA section of her brief. *See* Doc. [85] at 13-14. There, she argues that the misuse argument is "misplaced" for two reasons, neither of which is persuasive. First, Vitello asserts that she used the product in accordance with the directions, *i.e.*, taking one tablet in the morning and one tablet in the evening with a meal. *Id.* at 14. But Defendants do not dispute that she followed the product directions. *See* Doc. [54] at 12 (discussing Natrol's misuse argument). Second, Vitello claims that "nothing [she] did following her purchase of Cognium is relevant to the misrepresentation which induced her to purchase the product in the first place." Doc. [85] at 13. Once again, that argument focuses on misrepresentation, not ascertainable loss.

Unlike Vitello, Natrol correctly identifies the legal question presented: whether Vitello can, given her undisputed admissions, establish ascertainable loss. *See* Doc. [86] at 9. It argues that she cannot, and the Court agrees. Under the benefit of the bargain rule, establishing ascertainable loss requires that the value of Cognium "as represented" is less than the "actual value." *Murphy*, 503 S.W.3d at 313. At the time Vitello purchased it, Cognium's packaging clearly stated that it was not intended to treat any disease and cautioned consumers to consult their healthcare providers if they had any medical condition or were taking prescription drugs. Doc. [56-2] ¶2. "As represented," then, Cognium was a nutraceutical that would *not* treat ADD. Vitello cannot, as a matter of law, establish ascertainable loss by showing that the product failed to do something it never purported to be capable of. Ascertainable loss in Missouri is rooted in the "bargain" between the parties. *Kendrick*, 123 S.W. at 939 ("[T]he purchaser is entitled to the full benefits of [her] bargain."). Vitello never "bargained" for Cognium as a replacement for

---

[3] In this particular passage, Vitello is referring to the disclaimer that Cognium is not intended to "diagnose, treat, cure or prevent any disease," Doc. [85] at 10, but she makes an almost identical argument in connection with the disclaimer to "[c]onsult your healthcare profession." *See* Doc. [85] at 13.

[4] Also unresponsive to Natrol's argument is Vitello's discussion of the "ingredients list defense." *See* Doc. [85] at 11-12. Natrol does not assert that defense explicitly or by analogy. *See* Doc. [86] at 10.

Adderall, so she cannot have lost that purported benefit.  Thus, regardless of any alleged misrepresentation of the clinical basis for the claims Natrol did make, Vitello cannot succeed on her MMPA claim because she cannot establish that she suffered an ascertainable loss.

## II.     PLAINTIFF CANNOT ESTABLISH UNJUST ENRICHMENT.

A claim for unjust enrichment under Missouri law has three elements:  1) "plaintiff must confer a benefit and enrich a defendant," 2) "the enrichment must be at the expense of the plaintiff," and 3) "it would be unjust for the defendant to retain the benefit."  *Hawkins v. Nestle USA Inc.,* 309 F. Supp. 3d 696, 708 (E.D. Mo. 2018) (citing *Miller v. Horn*, 254 S.W.3d 920, 924 (Mo. Ct. App. 2008)).  "The most significant of the elements for a claim of unjust enrichment is the last element."  *S&J, Inc. v. McLoud & Co.*, 108 S.W.3d 765, 768 (Mo. Ct. App. 2003).  Finding Natrol's argument that its retention of the purported benefit is not "unjust" because Vitello misused the product persuasive, *see* Doc. [54] at 18, the Court ordered Vitello to brief that issue.  *See* Doc. [84] at 6-8.  Vitello offers two arguments in response.  First, Vitello notes that a money-back guarantee cannot prevent an unjust enrichment claim.  Doc. [85] at 15.  As stated in denying the Motion to Dismiss, the Court agrees.  *See* Doc. [19] at 10 ("A money-back guarantee does not prevent the common law cause of action of unjust enrichment.").  And second, Vitello states that Natrol's "misuse argument" was previously rejected by the Court at the motion to dismiss phase.[5]  Doc. [85] at 15; *see* Doc. [19] (holding that "[i]f Natrol's misrepresentations convinced Vitello to purchase something she otherwise would not have, and Natrol still has possession of Vitello's money from that purchase, then Vitello has . . . stated a claim for unjust enrichment").  But there the Court was establishing the sufficiency of the pleadings, not making a judgment based on evidence.

As to the actual question presented, the Court again agrees with Natrol.  In *Bratton v. Hershey Company*, the plaintiff brought an unjust enrichment claim based on the defendant's misrepresentations on a product's packaging.  No. 2:16-cv-4322-C-NKL, 2018 WL 934899, at \*4 (W.D. Mo. Feb. 16, 2018).  But because the plaintiff was aware of the misrepresentation when she purchased it, she could not establish that she relied on the misrepresentation, and, therefore, she could not establish the defendant's retention of the purchase price was unjust.  *Id.*  Here, Vitello was not aware of the misrepresentation she alleges in this lawsuit, but she was

---

[5]  Vitello also concludes that "[t]here remain genuine issues of material fact" regarding the unjust enrichment claim, but she identifies none.  Doc. [85] at 15.

7

aware that Cognium was not intended to be used to treat ADD or without consulting a healthcare professional. Doc. [56-3] at 52 (Vitello "probably knew [the warning] existed because they're on most supplements); *id.* at 55-56 ("It's possible" she read the disclaimer because "most of your supplements have this on there," and she "was pretty sure [the disclaimer was] there."). Because Vitello purchased Cognium to replace Adderall despite her awareness of those warnings, the logic of *Bratton* applies, and she cannot establish Natrol's retention of her money was unjust.

Even if Vitello had been unaware of the disclaimers, she still could not establish that Natrol's retention of the benefit was "unjust" for the same reasons discussed in the MMPA claim. *See Hawkins*, 309 F. Supp. 3d at 708 (discussing standard for unjust enrichment). In establishing unjust enrichment, "[m]ere receipt of benefits is not enough, absent a showing that it would be unjust for defendant to retain the benefit." *Miller*, 254 S.W.3d at 924. "Unjust enrichment can only occur when a person retains a benefit without paying its reasonable value." *Id.* at 925 (emphasis omitted). In deciding whether a defendant's retention of the benefit is unjust, "courts considers whether any wrongful conduct by the defendant contributed to the plaintiff's disadvantage." *S&J, Inc.*, 108 S.W.3d at 768. Plaintiff's alleged "disadvantage" is that Cognium did not improve her memory, concentration, or cognition, Doc. [80] ¶¶ 90-91, when she used it as an "alternative" to Adderall, Doc. [56-3] at 29. But any "wrongful conduct" by Defendant—*i.e.*, in misrepresenting clinical studies—did not contribute to Vitello's disadvantage because Natrol never represented that her memory, concentration, or cognition would improve under the circumstances in which she used—or *mis*used—Cognium. Thus, her disadvantage is unconnected to Natrol's alleged wrongful conduct and she cannot establish that it was "unjust" for Natrol to retain the purchase price. Thus, like her MMPA claim, her unjust enrichment claim must be dismissed.

Because Vitello's claims are dismissed, she cannot represent the purported class. *See Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 n.8 ("Since a class representative must be part of the class, [the named plaintiff] cannot represent the class because his claim was properly dismissed."); *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1056 (E.D. Mo. 2009) (stating the same). Vitello thus lacks standing to bring the class action, and the Complaint must be dismissed in its entirety. *See Amburgy*, 671 F. Supp. 2d at 1058 (dismissing claims of class representative and holding that "plaintiff lacks standing to bring this cause of action, [so] the

8

Complaint is dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction").

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Natrol, LLC's Motion for Summary Judgment (Doc. [51]) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Complaint is dismissed.

A separate Judgment shall be entered accordingly.

Dated this 25th day of August, 2021.

*Sarah E. Pitlyk*

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE